### Red Arrow, Inc. v. Pennsylvania Liquor Control Board

*Daniel J. Ratchford,* for appellant.
*Walter A. Criste,* for appellee.

BRUMBAUGH, *J.,* October 6, 1982—The issue before us is whether, on May 29 and/or 30, 1980 Red Arrow, Inc., a restaurant licensee of the Pennsylvania Liquor Control Board, was in violation of the following regulation or restriction adopted pursuant to the Liquor Code of 1951:

"No hotel, restaurant, or eating place licensee shall hold or permit to be held, on the licensed premises or on premises contiguous and adjacent thereto, any tournament or contest; *nor* directly or indirectly advertise, offer, award, *or* permit the award, on the licensed premises of any trophies, prizes, or premiums, for any purpose except as follows: [no exceptions are here applicable]. (Emphasis supplied.)

Title 40 Penna. Code, section 5:32(g). The board after hearing found such violation and, by order of October 31, 1980, imposed a $100 fine. Hence this appeal.

Appellant-licensee urges before this court that, in order to sustain its burden of proof, the board must demonstrate all three of the following: (1) the advertising of a contest, (2) the holding of a contest and (3) the offer and/or award[1] of a prize therefor. We disagree. The wording of the above-quoted regulation being in the disjunctive rather than the conjunctive, the board must show but one of the alleged elements to meet its onus. True that the citation as issued charged:

---

1. Appellant is in error relative to the *award* of a prize; while this is a prohibited offense under the regulation, it could not be found to have committed the same for the reason that such violation is not charged in the citation.

"The licensee, but its servants, agents or employes, indirectly advertised a contest and held the contest on the licensed premises and offered the award of a prize to the winner thereof, on May 29, 30, 1980."

However, although referring to all that supposedly occurred relative to a particular incident, the board was in reality asserting three separate and distinct offenses of which the episode was comprised. We shall examine them individually.

The basic incident itself is virtually undisputed. On Friday evening, May 30, 1980 male[2] patrons entering the licensed establishment paid a $4 cover charge to an employee seated at a table just inside the main entrance door, in return for which they received a numbered green ticket rendering each eligible for selection as a participant in what we shall for the present refer to as a T-shirt "show," scheduled for 11:00 p.m. During the course of the evening various announcements relative to the "show" were made on the premises over a public address system, such as "One hundred dollars to the winner", "If you have it why not flaunt it?" and "Sign up now for the wet T-shirt contest." At the appointed hour four young ladies—Denise, Eva, Jay and Lisa—were individually called forward and, as each in turn was introduced and stepped into a child's wading pool placed on an elevated platform, a ticket was drawn from a container and the male patron in possession of the correspondingly-numbered ticket would surrender it, be handed two squirt-guns and, standing in front of the girl in the pool, proceed to squirt water on her

---

2. Whether the cover charge likewise applied to female patrons is unclear, although we presume that none of them were eligible squirt-gun participants.

T-shirt front. The desired and ultimate result was to render the T-shirt partially transparent. The emcee would then ask for applause, the girl attracting the greatest volume of approval as so indicated from the spectating patrons to be declared the winner. Denise and Eva were eventually declared co-winners.

We have no difficulty accepting appellant's argument that no "contest" was advertised. The Red Arrow notice which appeared in the Altoona Mirror, a newspaper of general circulation in Blair County, on the preceding evening of Thursday, May 29th certainly constituted an advertisement, but the only reference therein made to the "show" hereinabove described was as a "T-shirt Exhibit." Such an advertisement in and of itself would be ambigious to a large segment of the general public, could reasonably be interpreted to mean simply that T-shirts with unusual colors, designs or patterns should be worn by attending patrons and, in any event, makes no mention of any competition among wearers or judging to be conducted. There could be no community recognition of any latent communication intended by such a notice, for the manager's uncontradicted testimony was that the licensee had never before held a "T-shirt exhibit." The advertisement seemed designed to increase patronage as much by creating curiosity about its meaning as anything else.

Nor can the quoted announcements at the establishment and preceding the "show" be considered advertisements, for they were addressed only to those already present rather than to the public in general and, therefore, were not inducements to draw attendance.

Further, we would disagree with counsel for the board that the privilege or chance of being chosen

to wet down one of the young ladies' T-shirts could be regarded as a "prize." To our thinking this word, in its undefined regulatory context, neither contemplates nor encompasses something of only questionable or intangible worth, something not readily reducible to or recognizable as having monetary value or subject to economic appraisal. This connotation of tangibility exists when, as here, the prohibition couples and places "*trophies*, prizes, or premiums" together. "General words shall be construed to take their meanings and be restricted by preceding particular words": the Statutory Construction Act of 1972, 1 P.S. § 1903(b). The "prize" concept is further minimized by the uncontroverted testimony of licensee's manager that a cover charge is always exacted on Friday and Saturday evenings for general admission in order to help defray the expense of engaging weekend bands from the Pittsburgh area, the cost of which is higher than that for hiring local bands; in this regard it must be noted that the $4 cover charge applied regardless of whether the patron was going downstairs, where the band was playing, or upstairs, to the disco area where the "show" eventually took place.

It is manifestly clear, however, that a "contest" was in fact held. An "exhibit" may invite comparison between two or more items or objects, but a "contest" goes farther and projects the designation of a winner, someone who officially prevails as a consequence of the comparison(s). While the precise basis of the comparison remains uncertain— whether it was the extent of disclosure or the size, the shape or some other attribute of the dampened bosoms—the votes of applause and the resulting declaration of a tie for first place elevated the "exhibit" to actual competitive level and lent to it

contest status, particularly when the young ladies knew in advance that a winner was to be determined.

The extreme difficulty which the average mind has in divorcing what took place on the Red Arrow stage from contest categorization is demonstrated by the fact that the public address system announcer for the "show," as well as the licensee's only witness, both personally regarded it as a contest.[3] The former expressly solicited entrants to "sign up now for the wet T-shirt *contest*". Mr. McCormick, appellant's manager who placed the Mirror advertisement and was present during the "exhibit," himself inadvertently and on direct examination committed a strategical error by testifying that "one of the contestants was one of our employees"; this slip of the tongue uncloseted his own inner and sincere thought on the matter. Exhibitors participate in exhibits, while contestants participate in contests.

Having determined that a "contest" was indeed held, we need go no farther in inquiring whether Regulation 5:32(g) was violated. Nonetheless, it is also obvious that a cash prize was *offered*. It is true that no prize was presented on stage and that no money changed hands before the eyes of the patrons in attendance; further, Mr. McCormick stated that no prize was either awarded or "intended to be awarded." At no time, however, did Mr. McCormick deny that money was verbally held out, the testimony of Enforcement Officer Yonick standing

---

3. While we sustained the objection of licensee's counsel to Mr. Yonick's testimony referring to the "show" as a "contest" on the ground that such was an ultimate conclusion at issue before the court, no objection was raised to his verbal classification of the participating young ladies as "contestants."

unimpeached that loudspeaker announcements sought the enlistment of volunteers with the enticement "One hundred dollars to the winner."

Having found that a prize was offered and a contest held, we thereby conclude that the Liquor Code restriction was breached twofold, or violated in two respects, on the same evening. Since no contest advertisements were published, however, no violation was committed on the preceding day. These altered findings, not being materially different from those of the board but to the contrary being substantially the same, are preclusive of any authority of this court to change or modify the penalty assessed by the board. Even if our adjudication of one less violation than found by the board were materially different from the board's (see Barone's, Inc. v. Pennsylvania Liquor Control Board, 10 Pa. Commonwealth Ct. 563, 565, 312 A. 2d 74, 75 (1973) ) we would be disinclined to reduce the fine, for §471 of the Code, 47 P.S. §4-471, mandates a minimum fine of $50 whenever a single offense has been shown. Here there were two, so the board-imposed fine is certainly not excessive. Accordingly we enter the following

## ORDER

And now, October 6, 1982, the appeal of Red Arrow, Inc. from the Pennsylvania Liquor Control Board's finding of a violation on May 29, 1980 is sustained, but the appeal of said licensee from the board's finding of two violations on May 30, 1980 is dismissed. The fine of $100 imposed by the board to Citation no. 1727, 1980 is hereby affirmed, the licensee having 30 days from the date of this order within which to pay the same in full.